PETE HAYDEN V. THE STATE.

No. 950. Decided February 8, 1911.

**Burglary—Preparation for Trial—Statement of Officers.**

Where, upon appeal from a conviction of burglary, the appellant claimed that at the time of the trial he was but sixteen years of age, and that he was misled by the statement of the sheriff in not preparing for trial and securing his evidence by which he could show a good defense or mitigate his punishment, all of which he set up in his motion for new trial, but there was nothing in the record that the officer had fraudulently imposed upon appellant, or which would authorize a reversal, the case must be affirmed.

Appeal from the District Court of Titus. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Rolston & Ward,* for appellant.—Upon question of being misled by statement of officer in failing to prepare for trial: Berry v. State, 75 S. W. Rep., 858; Acts 1909, pp. 100, 101.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted for burglary with intent to steal, charged to have been committed on or about the 16th day of February, 1909. He was convicted and his penalty assessed at

two years term in the penitentiary. The court gave a full and apt charge on this subject, including a charge on circumstantial evidence. No complaint is made of the charge.

The evidence clearly shows that on the morning of February 16, 1909, John Wilkinson, the witness whose house was burglarized, closed up his house where he and his family lived—no one left therein—and started to Mount Pleasant, about three-fourths of a mile distant, to mail some letters. As he was leaving his place, just outside of his yard, he met the appellant, who inquired for one of the witness' boys. He was told that the boy was not at home, but was off assisting his mother in washing. The witness knew the appellant, who had been a visitor to his family from time to time. The witness continued toward Mount Pleasant, but saw the appellant enter his yard, going towards his house. He did not see him enter the house. Witness was gone from his house from twenty to thirty minutes. On returning, when near his house he saw the appellant leaving his back yard, and he went across a field. He did not stop appellant, or halloa at him, because at the time he had not suspected anything wrong. Just before leaving home the witness had placed his gold watch and gold ring in his trunk and locked his trunk. After reaching his house and sitting down and reading awhile, he concluded he would get his watch and put it on. When he went to the trunk he found the trunk had been broken open and his watch and ring both gone. He suspected the appellant and began a search for his watch and ring. Some two or three days later he located his watch in the hands of another party several miles off, to whom the appellant, the witness says, had pawned it for one dollar and a half. He identified the watch as his beyond question. Soon after the burglary, perhaps the same day, the appellant gave the ring to a negro girl about seventeen years of age, who lived some few miles from the house burglarized. The ring was clearly identified, showing that it had the initials "J. W." inside of it, which the owner said he himself had put there with his pocket-knife. At the same time the appellant handed to the mother of the girl the watch, requesting her at first to keep it for him. A day or two later he wanted her to sell it for him, which she declined to do. He was not wearing the watch or ring either when he reached the place where the girl and her mother lived to whom he gave the ring and handed the watch. He stayed at this place two or three days. At the time he handed the watch to the mother and gave the ring to the girl he claimed that both of them had been sent to him by some kinsman in Louisiana. No one else was shown to have been within or about the house from the time the witness Wilkinson left it when the defendant was going towards it till he returned some twenty or thirty minutes later, when the defendant was leaving his back yard and went across a field.

The appellant, it appears, had no attorney to represent him in the trial of the case. After his conviction he employed attorneys, who filed a motion for new trial for him, which was sworn to by the appellant.

The substance of the motion is that the appellant was under sixteen years of age; that he did not know that his age was material until after his conviction; that he was misled in not employing attorneys by the sheriff, for whom he worked, who informed him that there was no danger of his being sent to the penitentiary; that some three weeks before the term of the court at which he was convicted his father, hearing of his indictment, came to see him for the purpose of making an investigation of the charge against him and employing attorneys for him, but that his father was informed by appellant of the information the sheriff had given him, appellant, that he did not need any attorneys, and not to employ any, because he did not know that the State was going to press the charges against him; that he also had an aunt who, in August, was going to make some arrangement for attorneys to represent him, but she was informed by the sheriff that there was no danger of his being sent to the penitentiary, and that he did not need a lawyer, and she did not employ one; that because of all of this and his information from the sheriff he had no witnesses subpoenaed; that if he had witnesses he could have proved that the watch which State's witnesses identified was not the watch that had been stolen, but was the property of a negro woman living in Mount Pleasant, and that the evidence tending to connect him with the breaking and entering the burglarized house was insufficient to connect him therewith, and that the watch he had was not the watch of the prosecuting witness Wilkinson whose house was burglarized. To his motion for new trial is attached the affidavit of his father, who swears that he knows the age of the appellant; that he was born on January 8, 1894, and would be sixteen years of age on January 8, 1910; that he did not know his son was in trouble in the court until two or three weeks before; that he then came to Mount Pleasant where the appellant had been working, saw him, appellant, asked him about it, and that he was out of jail and working for Mr. Sanders, the sheriff, and that he was not in trouble. That upon his return home he saw an aunt of the appellant, by whom he was informed that said Sanders had told her that there was not anything against defendant and that he was not in any danger of going to the penitentiary; that he did not know anything further of the case until after he was informed that the defendant had been convicted, when he came to Mount Pleasant to see about the case as soon as he could.

The State contested the motion for new trial on the grounds that the matters therein alleged were not true. To this contesting pleading was attached the affidavit of the constable of precinct No. 1 in Titus County, who swore that he knew the defendant and had known him for some time, and from his personal appearance he believed he was more than sixteen years of age and was at least seventeen or eighteen years of age. The court in the judgment overruling the motion for new trial states, "And the court having heard said motion and the evi-

dence thereon submitted, is of the opinion that the same should be overruled," and did overrule it.

We deem it unnecessary to discuss separately the various grounds set up in the motion for new trial. The evidence is clearly sufficient to sustain the conviction. None of the grounds of the motion for new trial, under the circumstances, are sufficient to entitle appellant to a new trial. This case does not come within any of the cases where the defendant is shown to have been so fraudulently imposed on as to entitle him to a reversal. There is nothing in the record sufficient to justify us to hold that the lower court erred in overruling the motion for new trial on any of the grounds thereof.

The judgment will therefore be affirmed.

*Affirmed.*